IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KAY PRIES and <br> PAMELA DANIELS, individually and <br> On behalf of all others similarly <br> situated, <br> <br> Plaintiff, <br> <br> v. <br> <br> GREENPATH, INC. <br> <br> Defendant. | CIVIL ACTION NUMBER: <br> <br> 5:20-CV-00353-MTT <br> <br> **CLASS ACTION** |

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES IN CLASS ACTION**

COME NOW, Plaintiff Kay Pries and Pamela Daniels, individually and on behalf of all others similarly situated, and file this, their First Amended Complaint for Damages pursuant to the Georgia Debt Adjustment Act, OCGA § 18-5-1 *et seq.* ("GDAA") and the Georgia Fair business Practices Act, OCGA § 10-1-390 *et seq.* ("FBPA") against Greenpath, Inc. and show this Honorable Court the following:

**PREAMBLE**

Plaintiffs file this, their First Amended Complaint following removal to this Federal Court pursuant to Fed. R. Civ. P. 15 (a) (1) (A), as this amendment is filed within 21 days of Defendant's removal to this Court.

**NATURE OF THE ACTION**

1.

This is a proposed class action brought on behalf of all Georgia residents who have done business with Defendant since July 1, 2003 to the present wherein Defendant engaged in debt

adjusting as defined by Georgia's Debt Adjustment Act, OCGA §§ 18-5-1 *et seq.,* (hereinafter the "Act" or "GDAA") for said Georgia residents.

2.

Plaintiffs also pursue this action under the Fair Business Practices Act, OCGA §§ 10-1-390 *et seq.*, (hereinafter "FBPA") which authorizes, in addition to all other remedies, recovery of actual damages, plus exemplary damages and, in the case of intentional violations of the FBPA, treble damages; personal liability of responsible corporate officers when a corporate defendant fails to pay a judgment within thirty days, and reasonable attorneys' fees and costs of litigation, because the GDAA provides that a violation of the GDAA is also a violation of the FBPA.[1]

## PARTIES, JURISDICTION AND VENUE

3.

Plaintiff Kay Pries is a domiciliary of the State of Georgia and of Bibb County.

4.

Defendant Greenpath, Inc. in a foreign Michigan corporation, duly registered with the Georgia Secretary of State, with its principal place of business located at 36500 Corporate Drive, Farmington Hills, MI, 48331.

5.

Greenpath maintains its registered office at 900 Old Roswell Lakes Pkwy, Suite 310, Roswell, GA, 30076, and names Registered Agents Solutions, Inc. as its registered agent. Greenpath may be served with Summons and a copy of this Complaint at this address.

---

[1] See OCGA § 18-5-4(d).

6.

Venue is appropriate in the Middle District of Georgia because the Plaintiffs reside within the judicial district, a substantial part of the events giving rise to the claim occurred within the district, and the named Defendant transacts business here.

## RELEVANT FACTS AS TO PLAINTIFF PRIES

7.

Prior to June 2017, Plaintiff Pries had amassed $23,141.00 in unsecured credit card debt and began having trouble paying these debts.

8.

Plaintiff Pries found Defendant Greenpath through an internet search and she made contact with Greenpath to discuss enrolling in Defendant's Debt Management Program ("DMP").

9.

On or about June 14, 2017, Plaintiff Pries enrolled in Defendant's DMP.

10.

The "Georgia Debt Management Agreement" (hereinafter "Agreement") signed by Plaintiff Pries states in relevant part:

> I will pay a monthly fee of 7.5% of the amount paid by me for distribution to my creditors , not to exceed $50.00 in any month, as a service charge for the maintenance of my debt management program including, but not limited to, the distribution of payments to my creditors, communicating with my creditors regarding the status of my account, and making changes to my account as necessary to ensure that it is administered in my best interest. The total of fees to be charged during the term of this agreement will not exceed $2,020.50.

A redacted copy of the Pries Agreement is attached hereto as Exhibit 1.

11.

The Agreement further states that Plaintiff Pries' first payment to Greenpath, Inc. will be $68.00, and then beginning on June 23, 2017 Plaintiff's payments would be $125.00 per week for the duration of the DMP.

12.

At some point during the duration of Plaintiff Pries' participation in Defendant's DMP, Plaintiff's weekly contribution was increased from $125.00 to $150.00 per week.

13.

In July 2018, Defendant distributed a total of $329.33 to Plaintiff Pries' creditors and retained for itself $33.67, an amount equal to 10.22% of the amount Defendant distributed to Plaintiff Pries' creditors.

14.

Again, in August 2018, Defendant distributed a total of $329.33 to Plaintiff Pries' creditors and retained for itself $33.67, an amount equal to 10.22% of the amount Defendant distributed to Plaintiff Pries' creditors.

15.

Plaintiff Pries terminated her participation in Defendant's DMP on or about September 8, 2018.

**RELEVANT FACTS AS TO PLAINTIFF DANIELS**

16.

Prior to October 2019, Plaintiff Daniels had amassed $15,033.41 in unsecured credit card debt and began having trouble paying these debts.

17.

Plaintiff Daniels found Defendant Greenpath through an internet search and she made contact with Greenpath to discuss enrolling in Defendant's Debt Management Program ("DMP").

18.

On or about October 23, 2019, Plaintiff Daniels enrolled in Defendant's DMP.

19.

The "Georgia Debt Management Agreement" (hereinafter "Agreement") signed by Plaintiff Daniels states in relevant part:

> I will pay a monthly fee of 7.5% of the amount paid by me for distribution to my creditors, not to exceed $50.00 in any month, as a service charge for the maintenance of my debt management program including, but not limited to, the disbursement of payments to my creditors, communicating with my creditors regarding the status of my account and making changes to my account as necessary to ensure that it is administered in my best interest. The total of fees to be charged during the term of this agreement will not exceed $3,000.00.

A redacted copy of the Daniels Agreement is attached hereto as Exhibit 2.

20.

The Agreement further states that Plaintiff Daniels' first payment to Greenpath, Inc. will be $10.00 on October 25, 2019, and then beginning on November 8, 2019 Plaintiff Daniels' payments would be $225.00 per week for the duration of the DMP.

21.

Plaintiff Daniels' October 2019 statement, attached as Exhibit 3, states: "Reminder: A minimum deposit of $225 Weekly is necessary to maintain the payment agreement with your creditors."

22.

Plaintiff Daniels' November 2019 statement, attached as Exhibit 4, states: "Reminder: A minimum deposit of $98.75 Weekly is necessary to maintain the payment agreement with your creditors."

23.

Plaintiff Daniels' December 2019 statement, attached as Exhibit 5, states: "Reminder: A minimum deposit of $163 Weekly is necessary to maintain the payment agreement with your creditors."

24.

Plaintiff Daniels' January 2020 statement, attached as Exhibit 6, states: "Reminder: A minimum deposit of $163 Weekly is necessary to maintain the payment agreement with your creditors."

25.

In October 2019, Defendant distributed a total of $0.00 to Plaintiff's creditors and retained for itself $50.00.

26.

In November 2019, Defendant received $490.00 from Plaintiff Daniels, distributed a total of $85.00 to Plaintiff's creditors and retained for itself $50.00, an amount equal to 58.82% of the amount Defendant distributed to Plaintiff's creditors.

27.

In December 2019, Defendant received $98.75 from Plaintiff Daniels, distributed a total of $350.00 to Plaintiff's creditors and retained for itself $50.00, an amount equal to 14.29% of the amount Defendant distributed to Plaintiff's creditors.

28.

In January 2020, Defendant received $163.00 from Plaintiff Daniels, distributed a total of $98.75 to Plaintiff's creditors and retained for itself $50.00, an amount equal to 50.63% of the amount Defendant distributed to Plaintiff's creditors.

29.

Plaintiff terminated her participation in Defendant's DMP in February 2020.

## **GEORGIA'S DEBT ADJUSTMENT ACT**

30.

Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully restated herein and further state as follows:

31.

The GDAA at OCGA § 18-5-1, defines debt adjusting as:

> [D]oing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts and contracting with a debtor for a fee to:
>
> (A) Effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor;
>
> (B) Receive from the debtor and disburse to his or her creditors any money or other thing of value.

32.

From its initial creation by the Georgia General Assembly in 1956 until its amendment of July 1, 2003, the GDAA stated that "[i]t shall be unlawful for any person to engage in the business of debt adjusting" and that **"[a]ny person who engages in the business of debt adjusting . . . shall be guilty of a misdemeanor**." OCGA § 18-5-2 (1956) (emphasis added).

33.

Thus, the original GDAA undeniably closed and locked the door for persons to offer debt adjusting for a fee in this state, unless incidental to the practice of law.

34.

In 2003, the General Assembly substantially amended the GDAA. In the amendment's enabling clause, the legislature stated that the purpose is:

> To limit the maximum charge that may be imposed for the provision of debt adjustment services; to provide for definitions; to provide for exemptions from those provisions related to debt adjustment; to require persons engaged in debt adjusting to obtain an annual audit of all accounts and to maintain a certain amount and type of insurance coverage; to provide for the disbursement of a debtor's funds within 30 days of receipt; to require persons engaged in debt adjusting to maintain trust accounts for debtors' funds; to provide for civil and criminal violations and penalties; to provide for investigation and enforcement; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

2003 Ga. Laws No. 103 p. 392 (House Bill No. 385).

35.

The amended GDAA thus removed the out-and-out prohibition on debt adjusting for a fee and cracked the door to allow debt adjusters to operate in Georgia as long as the Act's mandates are followed.

36.

The amended GDAA commands that the debt adjuster "*shall* maintain a separate trust account for the receipt of any and all funds from debtors and the disbursement of such funds on behalf of debtors" (OCGA § 18-5-3.2(b)); "*shall* disburse to the appropriate creditors all funds received from the debtor, less any fees authorized by [the Act], within thirty days of receipt" (OCGA § 18-5-3.2(a)); "*shall* obtain annual audits from independent CPAs on all accounts in

which Georgia debtors' funds have been deposited" (OCGA § 18-5-3.1(a)(1)); "*shall* obtain a specified level of insurance coverage for employee dishonesty depositor's forgery and computer fraud" (OCGA § 18-5-3.1(a)(2)); and "*shall not*:

> accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7·5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor . . .

OCGA § 18-5-2 (emphasis added).

37.

The amendment further provided for a civil remedy for a person's violation of the GDAA. OCGA § 18-5-4 states:

> Any person who engages in debt adjusting in violation of the provisions of [OCGA § 18-5-2 or § 18-5-3.2(a)] shall further be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00. Such debtor shall have the right to bring a cause of action directly against such person for violation of the provisions of this chapter.

**THE GEORGIA FAIR BUSINESS PRACTICES ACT**

38.

The Fair Business Practice Act ("FBPA"), at OCGA § 10-1-391 (a), states:

> The purpose of this part shall be to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the General Assembly that such practices be swiftly stopped, and this part shall be liberally construed and applied to promote its underlying purposes and policies.

39.

The FBPA at OCGA § 10-1-393 states that the following are violations of the statute:

> (b) By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are declared unlawful:

. . .

>(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

. . .

>(7) Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

. . .

>(9) Advertising goods or services with intent not to sell them as advertised;

40.

The GDAA at OCGA § 18-5-4 states that a violation of the GDAA is also a violation of the FBPA.

41.

Plaintiff Kay Pries sent the required FBPA *ante litem* pursuant to OCGA § 10-1-399 (b) to Defendant Greenpath on September 17, 2019. A copy is attached hereto as Exhibit 7.

42.

Greenpath responded on October 21, 2019, denying the relief requested by Pries. A copy is attached as Exhibit 8.

43.

"[E]xhaustion of administrative remedies is a precondition for suit, the satisfaction of this requirement by the class plaintiff normally will avoid the necessity for each **class** member to satisfy this requirement individually." Barnes v. City of Atlanta, 281 Ga. 256, 258 (2006) (citing 2 Newberg on Class Actions § 5:15, p. 438 (4th ed. 2002)).

<u>44.</u>

Thus, Plaintiff Pries has satisfied the prerequisites for bringing this action under the FBPA.

**CLASS ACTION ALLEGATIONS**

45.

Plaintiffs seek to have this Court certify the following class:

> All persons who, while residing in the state of Georgia, received debt settlement or debt adjusting services from Defendants on or after July 1, 2003 and from whom Defendants accepted, directly or indirectly, any charge, fee, contribution, or combination thereof.

46.

On information and belief, the named Plaintiffs and the Plaintiff Class Members were solicited by Defendant through a standard marketing scheme through which the Defendant offered Debt Adjustment services through Defendant's standard Debt Settlement scheme. Such marketing and services are typical of those experienced by the Plaintiffs and the proposed Plaintiff Class Members.

47.

On information and belief, the fees collected by the Defendant from the proposed Plaintiff Class Members are uniformly assessed to every customer of Defendant and can readily be determined from a ministerial review of the records of the Defendant.

48.

On information and belief, the contract entered into between Defendant and Plaintiffs are standard contracts which are substantially the same as the contract Defendant entered into with the Plaintiff Class Members.

49.

The names and addresses of the Plaintiff Class Members can readily be determined from a ministerial review of the records of the Defendant and through the account statements of the Defendant pertaining to collection of such charges, fees, contributions, or combinations thereof.

50.

The membership of the classes is numerous and joinder of individual plaintiffs is impractical. On information and belief, the Defendant have provided Debt Adjustment services to over hundreds of residents of the State of Georgia since July 1, 2003.

51.

There are questions of law and fact common to all members of the Plaintiff classes, and these common questions of law and fact predominate over any individual issues. The principle questions pertinent to the classes as a whole include:

a) Whether the Defendant's standard means of doing business in debt adjustments, debt settlement, debt reduction, budget counseling, and debt management constitutes "Debt Adjustment" under OCGA § 18-5-1;

b) Whether Defendant violated OCGA § 18-5-2 by accepting excessive fees from Plaintiff Class Members for the provision of Debt Adjustment services;

c) Whether Defendant violated OCGA § 10-1-390 *et seq.* when it violated the Debt Adjustment Act;

d) The liability of the Defendants for violations of the Georgia Debt Adjustment Act;

e) The liability of the Defendants for violations of the Georgia Fair Business Practices Act;

f) The appropriate measure of damages and the appropriate remedies;

g) The availability of statutory damages pursuant to OCGA § 18-5-4;

h) The availability of general damages, treble damages and attorneys' fee pursuant to OCGA § 10-1-399 (a), (c), and (d); and

i) Defenses raised by the Defendant;

52.

The claims of the named Plaintiffs are typical of the claims of the Plaintiff Class Members, which all arise from the same operative facts and are based on the same legal theory, and Plaintiffs' claims will thus adequately represent those of the Plaintiff Class Members.

53.

The named Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class Members. Plaintiffs have retained counsel with experience in class action litigation, and they are not aware of any interest that might cause them not to vigorously pursue this case.

54.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder is impracticable. The expense and burden of individual litigation make it virtually impossible for the members of the class to proceed individually, and it is therefore most efficient to resolve all claims based on the Defendant's conduct in one forum.

55.

The Plaintiffs are aware of no difficulties that will be encountered in the management of this litigation that would render the action unmanageable. This is not a class action that will require an analysis of the Defendant's conduct as to individual class members.

56.

Prosecution of separate actions by individual Plaintiff Class Members would create adjudications that would be dispositive of the interests of the other members not parties to the adjudication. Plaintiffs are not aware of any other pending actions against this Defendant for these same causes of action.

57.

Without a class action mechanism, members of the Plaintiff Class would be substantially impaired or impeded in their ability to protect their interests. The value of claims of the individual class members would be in an amount that makes prosecution outside of the class action uneconomical.

58.

A final judgment on the merits of the named Plaintiffs' claims would be fully dispositive of the claims and interests of those similarly situated who are not specifically named as a plaintiff in this action.

## **COUNT 1 – VIOLATION OF GEORGIA'S DEBT ADJUSTMENT ACT**

59.

Plaintiffs incorporate each of the foregoing paragraphs as if fully restated herein.

60.

Defendant is engaged in the business of providing "Debt Adjusting" services as that term is defined in OCGA § 18-5-1.

61.

Defendant provided Debt Adjusting services to Plaintiffs and the Class Members while they resided in the State of Georgia.

62.

Defendant contracted for and accepted from Plaintiffs and the Class Members a charge, fee, contribution, or combination thereof in an amount in excess of 7.5% of the amount they paid monthly for distribution to Plaintiffs' and the Class Members' creditors.

63.

For at least the months of July and August 2018, Defendant received from Plaintiff Pries funds for the payment of her creditors which Defendant retained a fee greater than the statutorily allowed 7.5%, in violation of OCGA § 18-5-2.

64.

For all months that Plaintiff Daniels participated in Defendant's DMP, Defendant received from Plaintiff Daniels funds for the payment of her creditors which Defendant retained a fee greater than the statutorily allowed 7.5%, in violation of OCGA § 18-5-2.

65.

Due to said violations of the GDAA, pursuant to OCGA § 18-5-4(b)(2), the Defendant is liable to Plaintiffs and the Class Members in an amount equal to the total of all fees, charges, and/or contributions paid by Plaintiffs and the Class Members to the Defendant, plus statutory damages in the amount of $5,000.00.

## COUNT 2 – VIOLATIONS OF THE FBPA

66.

Greenpath's violations of the GDAA also violated the FBPA.

67.

Greenpath intentionally violated the FBPA when it violated the GDAA.

68.

Greenpath is therefore liable to Plaintiffs, in addition to their remedies under the GDAA, for their actual damages, for treble their actual damages for the Greenpath's intentional violation of the FBPA, and for exemplary damages, plus reasonable attorneys' fees and costs of litigation.

## **GEORGIA'S STATE PROCEDURAL PROHIBITION ON CLASS ACTIONS PURSUANT TO THE FBPA IS PRE-EMPTED BY FED. R. CIV. P. 23**

69.

The FBPA, at OCGA § 10-1-399(a), states:

> Any person who suffers injury or damages as a result of a violation of Chapter 5B of this title, as a result of consumer acts or practices in violation of this part, as a result of office supply transactions in violation of this part or whose business or property has been injured or damaged as a result of such violations ***may bring an action individually, but not in a representative capacity***, against the person or persons engaged in such violations under the rules of civil procedure to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof in any court having jurisdiction over the defendant[.]

Emphasis supplied.

70.

However, as the United States Supreme Court held in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010):

> [Fed. R Civ. P. 23] says that if the prescribed preconditions are satisfied "[a] class action may be maintained" (emphasis added)-- not "a class action may be permitted." Courts do not maintain actions; litigants do. The discretion suggested by Rule 23's "may" is discretion residing in the plaintiff: He may bring his claim in a class action if he wishes. And like the rest of the Federal Rules of Civil Procedure, Rule 23 automatically applies "in all civil actions and proceedings in the United States district courts," Fed. Rule Civ. Proc. 1.

Id. at 400.

> In sum, it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule. We have held since *Sibbach [v. Wilson & Co.*, 312 U.S. 1, 14 (1941)], and reaffirmed repeatedly, that the validity of a Federal Rule depends entirely upon whether it regulates procedure.

Id. at 410.

71.

Further, the Eleventh Circuit held in *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015):

> This appeal presents two issues. The first arises from a conflict between Federal Rule of Civil Procedure 23, which authorizes class actions including for consumer claims of this kind, and the ADTPA[2], which creates a private right of action but forbids private class actions. We hold that Rule 23 controls.

72.

Thus, any prohibition under Georgia's FBPA to the implication of Fed. R. Civ. P. 23 has been abolished, and this matter may proceed as a class action in federal court.

**WHEREFORE**, Plaintiffs being entitled to a trial by jury and judgment against Defendants, pray for the following:

a) That summons be directed to Defendant and served upon it as provided by law;

b) That this Court set this matter down for a class certification discovery scheduling conference following the commencement of this action;

c) That Plaintiffs be designated class representatives for the Class as defined herein;

d) That Plaintiffs' counsel be designated class counsel for the Class as defined herein;

---

[2] The Alabama Deceptive Trade Practices Act ("ADTPA") is Alabama's equivalent law to Georgia's Fair Business Practices Act.

e) That the Class be certified for all persons who, while residing in the State of Georgia, received debt settlement or debt adjusting services from Defendant on or after July 1, 2003 and from whom Defendants accepted, directly or indirectly, any charge, fee, contribution, or combination thereof;

f) That the Court hold a hearing as soon as practicable for the determination of class certification for the Class;

g) For each violation of OCGA §§ 18-5-1 *et seq.* by Defendant, that Plaintiffs and the members of the Class be awarded an amount equal to all charges, fees, contributions, or combinations therefore paid to Defendant plus $5,000.00 as allowed under OCGA §§ 18-5-1 *et seq.*;

h) For each violation of OCGA § 10-1-390 *et seq.* by Defendant that Plaintiffs and the members of the Class be awarded their actual damages, and treble their actual damages pursuant to OCGA § 10-1-399 (c);

i) That Plaintiffs be awarded their attorneys' fees and expenses of litigation pursuant to OCGA § 10-1-399 (d);

j) That Defendant be required to pay all monies herein referred to in subparagraph g) and h) into a common fund for the benefit of the Class, less expenses and attorneys' fees;

k) That the Court conduct a "fairness hearing," after due and proper notice to all members of the Class, and make such award of attorneys' fees and expenses as the Court deems appropriate from the common fund (as above referred to) and/or from Defendant;

l) That Plaintiffs, individually and as class representatives for the Class, have a trial by jury;

m) That Plaintiffs and the members of the Class be awarded interest on any award granted, with such interest accruing from the time of the filing of this Complaint until the time final Judgment in this case is paid;

n) That Plaintiffs be awarded an incentive award from Defendant for the benefit the named Plaintiffs have conferred on the Class members through their commitment of time and expense in conducting this lawsuit; and

o) That Plaintiffs, individually and as class representatives of all others similarly situated as the Class, have such other relief as this Court deems proper.

Respectfully submitted, this 14th day of September, 2020.

**HURT STOLZ, P.C.**

/s/ James W. Hurt, Jr.
By: James W. Hurt, Jr.
Georgia Bar No.: 380104

1551 Jennings Mill Road
Suite 3100-B
Watkinsville, Georgia 30677
(706) 395-2750
Facsimile: 706-996-2576
jhurt@hurtstolz.com

**ATTORNEY FOR PLAINTIFFS
AND THE PUTATIVE CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically file the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notifications of such filing to all parties of record:

Brandon A. Oren
brandon.oren@jonescork.com,

Thomas W. Joyce
tom.joyce@jonescork.com

Respectfully submitted, this 14th day of September, 2020.

**HURT STOLZ, P.C.**

/s/  James W. Hurt, Jr.
By:  James W. Hurt, Jr.
Georgia Bar No.:  380104

1551 Jennings Mill Road
Suite 3100-B
Watkinsville, Georgia 30677
(706) 395-2750
Facsimile:  706-996-2576
jhurt@hurtstolz.com           **ATTORNEY FOR PLAINTIFF**