IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KAY PRIES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:20-CV-353 (MTT) |
| | ) |
| GREENPATH, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Defendant GreenPath, Inc. has moved to dismiss Plaintiffs' Second Amended Complaint for lack of standing, insufficient process, and failure to state a claim. Doc. 16. GreenPath also asks that, if not entirely dismissed, any claims pursuant to the Georgia Debt Adjustment Act ("GDAA") that accrued more than four years before the plaintiffs filed suit be dismissed. Doc. 16-1 at 16-18. Finally, GreenPath seeks the dismissal of the plaintiffs' requests for treble damages. *Id.* at 18-19. For the following reasons, GreenPath's motion (Doc. 16) is **DENIED**.

**I. BACKGROUND**

Plaintiffs Kay Pries and Pamela Daniels allege that GreenPath violated the GDAA and the Georgia Fair Business Practices Act ("GFBPA"), causing them damages. Doc. 14 at 1. The facts giving rise to their claims are similar. Pries and Daniels were both struggling to pay credit card debt and sought GreenPath's assistance. *Id.* ¶¶ 8, 9, 17, 18. GreenPath describes itself as "a national nonprofit organization that, for nearly 60 years, has provided clients with financial resources, including debt counseling and

foreclosure prevention, in order to empower them to lead financially healthy lives." Doc. 16-1 at 1.  The plaintiffs enrolled in GreenPath's Debt Management Program.  Doc. 14 ¶¶ 10, 11, 19, 20.  In this program, the plaintiffs agreed to contribute a weekly sum to GreenPath, and GreenPath agreed to repay the plaintiffs' creditors.  *Id.*  GreenPath does not dispute that its actions come under the GDAA's definition of debt adjusting.

The contract with GreenPath, identical in all relevant parts for Pries and Daniels, parrots the GDAA and states the plaintiffs, "will pay a monthly fee of 7.5% of the amount paid by [the plaintiffs] for distribution to [the plaintiffs'] creditors."  *Id.* ¶¶ 11, 20.  The GDAA similarly states that "it shall be unlawful for any person to accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor."  O.C.G.A. § 18-5-2.

Pries alleges that in July 2018, she paid GreenPath $452.00.  Doc. 14 ¶ 14.  $329.33 was distributed to her creditors, and GreenPath "retained for itself $33.67, an amount equal to 10.22% of the amount [it] distributed[.]"  *Id.* ¶ 15.  Daniels alleges that in October 2019, GreenPath distributed no money to her creditors and retained $50.00 for itself; in November 2019, GreenPath distributed $85.00 to her creditors and retained $50.00 for itself (58.82%); in December 2019, GreenPath distributed $350.00 to her creditors and retained $50.00 for itself (14.29%); and, in January 2020, GreenPath distributed $98.75 to her creditors and retained $50.00 for itself (50.63%).  *Id.* ¶¶ 26-29.

The plaintiffs assert that GreenPath violated the GDAA each month because it kept a fee greater than 7.5 percent of the amount it distributed to the plaintiffs' creditors.

*Id.* ¶ 65.  The plaintiffs also assert GFBPA claims against GreenPath because of the same facts.  *Id.* ¶ 67.

GreenPath argues that the GFBPA claims should be dismissed because the plaintiffs failed to satisfy the GFBPA's pre-suit notice requirement.  Doc. 16-1 at 8-12.  GreenPath also argues that the plaintiffs are misinterpreting the GDAA's fee provision, and therefore they have failed to state a GDAA claim.  *Id.* at 12-13.  Further, GreenPath argues that Daniels lacks standing because she accepted a refund for any alleged over-charges.  *Id.* at 13-16.  GreenPath also urges the Court to apply a four-year statute of limitations to the GDAA claims and not a twenty-year statute of limitations, as the plaintiffs allege.  *Id.* at 16-18.  Finally, GreenPath states that the plaintiffs' complaint does not plead the facts necessary to state a claim for an intentional violation of the GFBPA, and therefore treble damages should not be available to the plaintiffs.  *Id.* at 18-19.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing Fed. R. Civ. P. 12(b)(6)).  "Factual allegations that are merely consistent with a defendant's liability

fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

## III. DISCUSSION

### A. Interpretation of the GDAA

The parties dispute the meaning of the GDAA's 7.5 percent fee cap. Specifically, the parties disagree on the amount upon which the fee is calculated. In other words, the question is 7.5 percent *of what* can GreenPath take as a fee. GreenPath believes it is the total amount paid from a debtor to a debt adjuster. Doc. 18 at 2. The plaintiffs believe it is only the amount paid from the debt adjuster to the debtor's creditors. Doc. 17 at 1. The plaintiffs are correct.

The Georgia Debt Adjustment Act states:

> In the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor, who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent *of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor*[.]

O.C.G.A. § 18-5-2 (emphasis added).

When interpreting Georgia statutes, "the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter." O.C.G.A. § 1-3-1(b). Also, courts in Georgia are to "presume that the General Assembly meant what it said and said what it meant." *Arby's Rest. Grp., Inc. v. McRae*, 292 Ga. 243, 245, 734 S.E.2d 55, 57 (2012). Further, "[i]f the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case, and the statutory scheme is coherent and consistent, the inquiry is over." *Athens-Clarke Cnty. Unified Gov't ex rel. Denson v. Fed. Hous. Fin.*, 945 F. Supp.2d 1401, 1405 (M.D. Ga. 2013).

GreenPath argues that if the plaintiffs' interpretation is what the Georgia General Assembly intended, then the General Assembly would have been more explicit when wording the statute. Doc. 18 of 3. But if the General Assembly wanted to enact GreenPath's interpretation of the statute, and base the fee on the total amount paid to a debt adjuster, then it simply would have omitted the phrase "for distribution to creditors of such debtor," so that the statute would allow a fee of "7.5 percent of the amount paid monthly by such debtor to such person." But that is not what the General Assembly did. Instead, it added language defining the amount upon which the fee is to be calculated, and necessarily that language has some meaning. To find otherwise would render that phrase surplusage, and "courts should not so interpret a statute as to make it

surplusage unless no other construction is reasonable possible." *Weyer v. State*, 333 Ga. App. 706, 711 (2015) (citing *Undercofler v. Colonial Pipeline Co.*, 114 Ga. App. 739, 742-43 (1966)). Therefore, because the phrase "for distribution to creditors of such debtor" is included after the phrase "of the amount paid monthly by such debtor to such person," the statute's plain meaning is that the maximum fee should be calculated based on the amount distributed each month to creditors. "For distribution to creditors" describes, specifies, and limits the preceding phrase, "the amount paid monthly by such debtor to such person."

Not only is that what the statute says—it is the only interpretation that makes sense.[1] Consider this scenario. A debt adjuster gets a debtor's creditors to take $10,000 in settlement of all debts.[2] When the debtor gives the debt adjuster $10,000 to give to her creditors, clearly the parties would calculate the adjuster's fee to be $750, 7.5 percent of the $10,000 paid to the creditors, and the debtor would pay the adjuster $750 for a total of $10,750. But GreenPath would calculate the fee based on $10,000 plus the amount necessary to pay the fee because that is what the debtor must give the debt adjuster—$10,000 plus the fee. The rather stilted calculation would be this: $10,810.81 – ($10,810.81 X .075) = $10,000.00. In other words, GreenPath's interpretation of the statute would require the plaintiffs to pay a fee based both on what they give the debt adjuster to give to the creditors and on what they give the debt adjuster as a fee. That makes no sense.

---

[1] Of course, the question is not what makes sense. The Court is to decide what the General Assembly did, not the wisdom of doing it. But here drafting and common sense coincide.

[2] This is not, the Court assumes, a typical scenario for a debt adjuster—no doubt debtors retaining debt adjusters pay small amounts over extended periods. But there is no reason why a debt adjuster could not negotiate a lump sum settlement for a debtor with resources and a lump sum settlement scenario clearly illustrates why GreenPath's reading of the statute is flawed.

In short, the GDAA requires debt adjustors to base their fees on the amount they are given to pay to creditors, not the amount they are given.

## B. Whether the Plaintiffs Have Properly Stated GDAA and GFBPA Claims

Plaintiffs state that GreenPath offered them debt adjusting services and "retained in excess of 7.5% of the amount they paid monthly for distribution to Plaintiff's … creditors."  Doc. 14 ¶¶ 63, 65.  The plaintiffs specifically point to multiple months where GreenPath kept a fee greater than the statutory maximum.  *Id.* ¶¶ 14, 15, 26-29.  The plaintiffs have properly stated GDAA claims against GreenPath.  Further, because a GDAA violation is also a GFBPA violation, the plaintiffs have properly stated GFBPA claims against GreenPath as well.  O.C.G.A. § 18-5-4.

## C. Whether the Plaintiffs Satisfied the GFBPA's Notice Requirement

GreenPath argues that the plaintiffs' GFBPA claims should be dismissed because the pre-suit notice sent by Pries to GreenPath did "not identify or reasonably describe an unfair or deceptive act by GreenPath or an injury to Pries as required by O.C.G.A. § 10-1-399(b)."  Doc. 16-1 at 10.  However, GreenPath hinges this argument on its incorrect GDAA interpretation.  *Id.* at 11.  The pre-suit notice identified the claimant, quoted the relevant portions of the GDAA and GFBPA, and specified when and how GreenPath violated those laws causing damages to Pries.  Doc. 8-7.  Thus, the pre-suit notice "identif[ied] the claimant and reasonably describ[ed] the unfair or deceptive act or practice relied upon and the injury suffered."  O.C.G.A. § 10-1-399(b).  Accordingly, the plaintiffs[3] have satisfied the pre-suit notice requirement to bring a GFBPA claim.

---

[3] GreenPath does not raise the argument that Pries's pre-suit notice did not satisfy Daniels's pre-suit notice obligation.  Therefore, the Court will not decide that issue here.

### D. Whether Daniels Lacks Standing Because She Accepted a Refund

GreenPath argues that Daniels lacks Article III standing to bring a GDAA claim. Doc. 16-1 at 15.  GreenPath admits that it overcharged Daniels (even when using its faulty calculations), but then it issued her a refund for the amount overcharged, which she accepted.  *Id.*  After the refund, the amount GreenPath kept as a fee was "slightly less than 7.5% of the total amount Daniels had *deposited* with it."  *Id.* at 15 n.8 (emphasis added).  Because GreenPath does not dispute it kept as a fee more than 7.5 percent of the amount it distributed to creditors, Daniels has standing to bring her claims.

### E. The Statute of Limitations Applicable to the GDAA

The GDAA does not contain a statute of limitations.  The plaintiffs argue that the 20-year statute of limitations in O.C.G.A. § 9-3-22 should apply.  Doc. 17 at 8.  GreenPath on the contrary argues that the four-year statute of limitations applicable to suits involving injuries to personalty applies.  Doc. 18 at 7.  The Court will not reach this issue now because there is no need to reach it.  The named plaintiffs' claims arise out of events that occurred in 2018 and 2019.  Doc. 14 ¶¶ 14, 15, 22-24.  Thus, regardless of which statue of limitations applies, the named plaintiffs' claims are not barred.[4]

### F. Whether the Plaintiffs Alleged an Intentional Violation of the GFBPA

GreenPath argues that the plaintiffs should not be allowed to seek treble damages under the GFBPA because their complaint does not "plead facts showing an 'intentional violation' of the GFBPA to support a claim for treble damages."  Doc. 18 at

---

[4] The Court recognizes that GreenPath is trying to fight the class action battle.  The time and opportunity for that will come.  But asking the Court to rule now on which of two statutes of limitations applies to the GDAA, despite neither possibly resulting in the dismissal the named plaintiffs' claims, is not the way to join that battle.

8. However, under the GFBPA, intentional violations and unintentional violations are not separate claims, they only result in a different measure of damages. O.C.G.A. § 10-1-399. The GFBPA states, "a court shall award three times the actual damages for an intentional violation." O.C.G.A. § 10-1-399(c). GreenPath attempts to stretch Rule 12(b)(6) past its limits.

GreenPath cites no authority to support its argument that the GFBPA requires heightened pleading. It does, however, point out that a claim for punitive damages pursuant to O.C.G.A. § 51-12-5.1 must plead facts that give rise to such a claim, and a complaint cannot contain only "a threadbare recital of the elements for such a claim." Doc. 16-1 at 19 (citing *Taylor v. MillerCoors, LLC*, 2014 WL 4179918 at *1 (M.D. Ga. Aug. 20, 2014)). This is true, and Rule 12(b)(6) would demand a dismissal of such a conclusory pleading. Here, however, the plaintiffs do not seek punitive damages; they seek statutory treble damages for a legitimately stated claim. Doc. 14 at 18. Because this is not a separate claim but is instead a category of damages made available by the statute, the Court will not "dismiss the Plaintiffs' request" at this early stage. In short, the plaintiffs have stated GFBPA claims, the amount of damages, if any, that they can prove should not be limited in a motion to dismiss.

Even if there were a heightened pleading requirement, the facts alleged show that for multiple months GreenPath retained more than the maximum allowed fee for debt adjusting. Doc. 14 ¶¶ 15, 26-29. Further, each of the alleged GDAA violations with respect to Daniels took place after Pries sent the pre-suit notice to GreenPath outlining her grievances. Docs. 14 ¶¶ 26-29, 42; 8-7. Thus, even if the plaintiffs were

required to plead facts alleging GreenPath acted with knowledge of its actions, the plaintiffs nonetheless would have satisfied their burden.

### IV. CONCLUSION

For the reasons stated above, GreenPath's motion (Doc. 16) is **DENIED**.

**SO ORDERED**, this 5th day of January, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
